UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW JEPSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | Case No. EDCV 13-1210 AN<br><br>MEMORANDUM AND ORDER |

Pursuant to the Court's Case Management Order, the parties have filed the Administrative Record ("AR") and a Joint Stipulation ("JS") raising one disputed issue. The parties have consented to proceed before the Magistrate Judge. The Court has carefully reviewed the parties' respective contentions in conjunction with the AR. This matter is now ready for decision.

**Issue #1**

Plaintiff contends that the Administrative Law Judge ("ALJ") improperly rejected the medical evidence establishing that Plaintiff suffers from a severe mental impairment at step two of the sequential evaluation. (JS 3-5, 11); *see* 20 C.F.R. 416.920(c). The Court agrees.

Plaintiff received psychiatric treatment for the periods May 2, 2009 to October 22, 2009, and April 16, 2010 to August 15, 2011. (AR 14, 191-203, 236-51.) In April 2010,

Plaintiff's treating physician, S. Eklund, M.D. diagnosed Plaintiff with bipolar disorder with psychosis and a learning disorder, NOS. (AR 14, 195.) Dr. Eklund gave Plaintiff a mental status examination and assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 40, indicating "some impairment in reality testing or communication" or "major impairment in several areas, such as work or school family relations, judgment, thinking or mood." (AR 14, 195); American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed., rev. 2000). The ALJ found that Plaintiff has a medically determinable impairment of affective disorder, but does not have an impairment or combination of impairments that are severe. (AR 11); 20 C.F.R. § 416.921.

In finding Plaintiff's mental impairment nonsevere, the ALJ noted that Plaintiff's mental status examination was "within normal limits," even though Plaintiff exhibited a depressed mood, fair insight, and poor judgment. (AR 14, 195.) The ALJ gave "great weight" to the opinions of two non-examining state agency medical consultants, who concluded that Plaintiff's mental impairment was not severe. (AR 15, 204-16, 233-34.) The ALJ also noted that Plaintiff was treated conservatively with Seroquel, an antipsychotic medication, and had not received in-patient treatment for his mental condition. (AR 12-14.) Finally, the ALJ found that Plaintiff's complaint that he suffers side effects from medication was not supported by the medical evidence and was inconsistent with his daily activities (i.e., watching television, maintaining his personal care, using public transportation, counting change, reading, drawing, and attending group meetings twice a week). (AR 12-14.)

An impairment or combination of impairments is severe within the meaning of step two when there is more than a minimal effect on an individual's ability to do basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2006); 20 C.F.R. § 416.921. Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking,

understanding, carrying out, and remembering simple instructions, using judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); *Webb*, 433 F.3d at 686. The step two inquiry is "'a de minimis screening device' [used] to dispose of groundless claims,' . . . and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Id.* at 687 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) and Social Security Ruling 85-28)).

The medical evidence in this case does not "clearly establish" the absence of a severe mental impairment. *Smolen*, 80 F.3d at 1290. The ALJ selectively highlighted those portions of Plaintiff's mental health records that supported the conclusion that Plaintiff's mental impairment was nonsevere, while understating evidence to the contrary. Although the ALJ could properly rely upon only certain portions of a medical opinion, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence to reject other portions of the treating physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996) (if a treating or examining physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record); *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). Here, the ALJ stated that Plaintiff's mental status evaluation from April 2010 was largely within normal limits. (AR 14, 195.) However, the ALJ failed to note that the same record also revealed that Plaintiff was experiencing paranoid/persecutory type delusions, had impaired memory, and reported a history of "many cutting episodes," with the most recent episode occurring just three days earlier. (AR 194-95.) In addition, Dr. Eklund's subsequent treatment records document Plaintiff's ongoing complaints of depression, agitation, and moodiness, as well as problems with paranoia, audio hallucinations, memory problems, and racing thoughts. (AR 242, 243, 245, 246, 247, 248.) The opinions of the non-examining state agency medical consultants, standing alone, do not constitute substantial evidence to warrant the

rejection of the medical evidence of record. *See Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 602 (9th Cir. 1999).

The other reasons cited by the ALJ, even when viewed collectively, do not constitute substantial evidence for the non-severe finding at step two. Although the ALJ found there was a six-month gap in mental health treatment from October 2009 through April 2010, the ALJ did not explain how the absence of treatment during this period negates Dr. Eklund's findings that Plaintiff suffers from bipolar disorder, a learning disorder, and associated symptoms. Moreover, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996) (citation and internal quotation marks omitted). As for Plaintiff's side effects from medication, contrary to the ALJ's finding, at least one record confirms Plaintiff's complaint. (AR 242.) While Plaintiff's daily activities may have been inconsistent with the degree of his reported side effects, Plaintiff's admitted activities do not necessarily establish that Plaintiff's mental impairment had no more than a minimal effect on his occupational functioning. Finally, that Plaintiff's treatment has consisted of a regimen of antipsychotic medication is not a sufficient reason to find Plaintiff's mental impairment non-severe. *See, e.g., Baker v. Astrue*, 09-01078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment."). Though Plaintiff did not have a history of hospitalization for decompensation or exacerbation of his mental symptoms, the absence of in-patient care is not determinative of a non-severe mental impairment. *See id.* at *2.

In sum, Plaintiff's medical records documenting his ongoing mental health conditions, as well as his history of using prescription medication to treat these disorders, indicate a level of impairment that at least meets the "de minimis" requirement at step two of the sequential evaluation. (AR 191-203, 236-51); *Smolen*, 80 F.3d at 1290.

Next, Plaintiff contends that the ALJ failed to give proper weight to Dr. Eklund's assessment of Plaintiff's limitations in performing work-related functions. (JS 5-11; AR

236-37.) In May 2011, Dr. Eklund completed a two-page, checklist form assessing Plaintiff's ability to do work-related activities. (AR 236-37.) Dr. Eklund checked boxes indicating that Plaintiff was "seriously limited, but not precluded" or "unable to meet competitive standards," in 22 out of 25 of the mental functional abilities listed. (AR 236-37.) Dr. Eklund opined that Plaintiff's impairments would cause him to be absent from work more than four days per month. (AR 237.)

The ALJ permissibly rejected Dr. Eklund's functional capacity assessment, as it was unsupported by clinical findings and objective data. (AR 14-15); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (noting that an ALJ need not accept a physician's opinion that is brief, conclusory and inadequately supported by clinical findings); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the ALJ did not err in giving "minimal evidentiary weight" to controverted treating source opinions that were "in the form of a checklist," and lacked supportive objective medical findings). Dr. Eklund failed to provide adequate explanation to substantiate his assertions that Plaintiff has disabling mental functional limitations,[1] and his treatment notes lacked substantive medical findings to support his conclusions. Thus, while Dr. Eklund's records indicate that Plaintiff suffers from a severe mental impairment, these records do not support the conclusion that Plaintiff's impairment caused the extreme functional limitations assessed.

Plaintiff contends the GAF score of 40 assessed by Dr. Eklund in April 2010 supports his functional capacity assessment. (JS 9; AR 195, 200.) However, a GAF score does not dispositively assess a claimant's ability to work. *See Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's

---

[1] When asked to provide medical or clinical findings supporting his assessment, Dr. Eklund wrote: "'[T]he last time I worked in 2003, I threw a hammer at a coworker.' 'I was fired for snapping/yelling/throwing things at customers. I've yelled at bosses. I've walked away from work.' He struggles with memory/attention span. He 'has been fired from every job [he's] worked at.' He threw ketchup packets at customers in the past." (AR 236-37.)

Page 5

accuracy."); *see also* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) (the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorder listings."). Here, Plaintiff's GAF score was suggested as part of his intake assessment with Dr. Eklund when Plaintiff was not being treated with medication. (AR 194-95, 198, 200.) As such, the GAF score was merely a "snapshot" assessment of Plaintiff's condition at the time he presented, and not indicative of disability throughout the period at issue. (AR 14, 194, 198.)

Plaintiff also contends that the ALJ erred in failing to recontact Dr. Eklund to ascertain the basis for his opinion or to obtain additional evidence. (JS 9-10.) That contention lacks merit. The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Dr. Eklund's opinion was not ambiguous. He was asked to identify medical or clinical findings supporting his opinion, but failed to do so. (AR 236-37.) And the record was not inadequate to allow for proper evaluation of Dr. Eklund's functional capacity assessment, as it contained numerous treatment records relating to Plaintiff's mental condition. (AR 191-203, 239-51.) Under these circumstances, the ALJ did not commit legal error by failing to recontact Dr. Eklund. *See Mayes*, 276 F.3d at 459-460 (rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

Accordingly, remand is warranted on Issue #1, with respect to the nonsevere finding at step two of the sequential analysis.

///
///
///
///
///

**ORDER**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds a remand is appropriate because there are unresolved issues that, when properly resolved, may ultimately still lead to a not disabled finding. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353 (2002) (upon reversal of administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotation marks and citation omitted). Accordingly, the present case is remanded for further proceedings consistent with this Memorandum and Order.

IT IS THEREFORE ORDERED that a judgment be entered reversing the Commissioner's final decision and remanding the case so the ALJ may make further findings consistent with this Memorandum and Order.

DATED: February 28, 2014

ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE